UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

IMAGINE COMMUNICATIONS
CORP.,

       Plaintiff,

v.

NAHUEL VILLEGAS and FERNANDO
MANFRINI,

       Defendants.

_____/

## COMPLAINT

Plaintiff Imagine Communications Corp. ("Plaintiff"), by and through the undersigned counsel, sues defendants Nahuel Villegas ("Villegas") and Fernando Manfrini ("Manfrini") (collectively "Defendants") and states:

## PARTIES, VENUE & JURISDICTION

1.     Plaintiff is a Delaware corporation with its principal place of business in Frisco, Texas.

2.     Defendant Villegas is an individual residing in Miami-Dade County, Florida.

3.     Defendant Manfrini is an individual residing in Miami-Dade County, Florida.

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

5.     This Court has personal jurisdiction over Defendants because:

(a)     Villegas and Manfrini breached employment agreements in the State of Florida

by, among other things, sharing confidential information with their new employer and failing to return Plaintiff's property following multiple requests after their employment ended;

(b)     Villegas and Manfrini reside in this judicial district; and

(c)     Villegas and Manfrini committed tortious acts within this judicial district.

6.      Venue for this action is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because both individual defendants reside in Miami-Dade County, Florida, and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

A.      **The Villegas Employment Agreement**

7.      On or about June 20, 2002, Villegas signed an Employee Agreement (the "Villegas Employment Agreement") as a condition of, and in consideration of his employment with the Broadcast Division (the "Broadcast Division") of a company called Harris Corporation (the "Company").  A copy of the Villegas Employment Agreement is attached hereto as Exhibit "A."

8.      The Broadcast Division, for which Villegas worked, was later acquired by Plaintiff, which assumed the Broadcast Division's employment agreements with its employees.

9.      Villegas was Plaintiff's Vice President of Sales and Operations for the Caribbean and Latin American regions.

10.     Pursuant to the Villegas Employment Agreement, Villegas agreed to keep certain information confidential that was of proprietary value to Plaintiff. Specifically, pursuant to Section 4 of the Villegas Employment Agreement, Villegas agreed that:

**4. Confidential Information Acquired During My Employment With Harris.**
During and after my employment with [the Company], I will maintain in strict

confidence and not disclose to any person or entity any [of the Company's] Confidential Information except with the prior permission of [the Company]. Also, I will not use any [Confidential Information] for the benefit of anyone other than [the Company].  Further, I represent that I will not, during my employment with [the Company], enter into any agreement requiring the protection of Confidential Information of another person or entity relating to any business or technology of [the Company] without the prior written consent of [the Company].

11.     Pursuant to the Villegas Employment Agreement, "Confidential Information" is

defined as:

Any confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or some other form, and includes, without limitation, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities . . . and know-how related to any of the above.

12.     Additionally, Villegas agreed that:

**6. Physical Property Acquired During My Employment.**  Upon termination of my employment for any reason, I agree to immediately return all physical and tangible property of [the Company] including but not limited to credit cards, keys, computers, equipment, supplies, and the originals and copies of any and all records, notebooks, drawings, technical data, photographs, recordings and computer files.

**B.     The Manfrini Employment Agreement**

13.     On or about November 15, 2004, Manfrini signed an Employee Agreement (the

"Manfrini Employment Agreement") as part of his employment with the Broadcast Division.  A

copy the Manfrini Employment Agreement is attached hereto as Exhibit "B."

14.     Manfrini was employed by Plaintiff as a Senior Manager and was part of

Villegas's sales team.

15.     Pursuant to the Manfrini Employment Agreement, Manfrini agreed to keep

certain information confidential.  Specifically, pursuant to Section 4 of the Manfrini Employment

Agreement, Manfrini agreed that:

3

**4. Confidential Information Acquired During My Employment With Harris.** During and after my employment with [the Company], I will maintain in strict confidence and not disclose to any person or entity any [of the Company's] Confidential Information except with the prior permission of [the Company]. Also, I will not use any [Confidential Information] for the benefit of anyone other than [the Company]. Further, I represent that I will not, during my employment with [the Company], enter into any agreement requiring the protection of Confidential Information of another person or entity relating to any business or technology of [the Company] without the prior written consent of [the Company].

16.     "Confidential Information" is defined as:

Any confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or some other form, and includes, without limitation, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities . . . and know-how related to any of the above.

17.     Additionally, Manfrini agreed that:

**6. Physical Property Acquired During My Employment.** Upon termination of my employment for any reason, I agree to immediately return all physical and tangible property of [the Company] including but not limited to credit cards, keys, computers, equipment, supplies, and the originals and copies of any and all records, notebooks, drawings, technical data, photographs, recordings and computer files.

**C.     Plaintiff's Proprietary and Confidential Information**

18.     Plaintiff has invested a substantial amount of time and financial resources into developing customer relationships and sales and marketing strategies pertinent to its business. In doing so, Plaintiff has created, among other things, development strategies, account strategies, customer lists and pricing models ("Plaintiff's Confidential Information").

19.     Plaintiff's Confidential Information is not available to the general public and is not readily ascertainable by others.

20.     Moreover, Plaintiff's Confidential Information is not commonly known in the industry.

21.     This information has significant economic value to Plaintiff and is, or would be, of significant economic value to competitors in the industry, such as Villegas and Manfrini's new employer, which is a direct competitor of Plaintiff.

22.     If a competitor of Plaintiff were to obtain access to Plaintiff's Confidential Information, the competitor could undercut Plaintiff and gain a competitive advantage over Plaintiff.

23.     Given the value of Plaintiff's Confidential Information, Plaintiff has invested significant time and resources into establishing, implementing and ensuring compliance with procedures for maintaining the confidentiality of Plaintiff's Confidential Information by, among other things, requiring employees, such as Villegas and Manfrini, to agree to maintain in strict confidence and not disclose to any person or entity any of the information.

24.     Additionally, the Confidential Information was protected under a variety of protocols, including setting up a process so that Confidential Information stored on Plaintiff's intranet cannot be accessed without a username and complex password.

25.     Only individuals specifically authorized by Plaintiff are permitted to access the information.

26.     Plaintiff employs physical security measures, such as requiring access cards, fingerprint and/or physical keys for entry into Plaintiff's offices, in order to prevent unauthorized access to Plaintiff's Confidential Information.

27.     Confidential Information is sometimes stored locally on Plaintiff's employees' laptops, which require a username and complex password to access. There are instances where Plaintiff's Confidential Information is stored locally on a laptop, but is inaccessible through Plaintiff's intranet.

28.     Defendants Villegas and Manfrini were provided access to Plaintiff's Confidential Information and proprietary information, including trade secrets, for the sole purpose of carrying out their job duties for Plaintiff.

**D.     Villegas's Breaches of the Employment Agreement and His Duty of Loyalty**

29.     As Vice President of Plaintiff, Villegas was entrusted with Plaintiff's Confidential Information, including, but not limited to, key development strategies, account strategies, customer lists, pricing models and confidential communications.

30.     At some point in 2016, Villegas received a job offer from a direct competitor of Plaintiff.

31.     Villegas decided to accept the position before resigning from his position with Plaintiff.

32.     Before Villegas resigned, Villegas and Manfrini together devised a plan to steal Plaintiff's valuable Confidential Information so that their new employer could gain a competitive advantage over Plaintiff and/or to enrich themselves at Plaintiff's expense.

33.     While still employed by Plaintiff, Villegas claimed that his laptop was lost or stolen at an airport.

34.     Villegas made this claim in furtherance of his plan to copy or steal highly sensitive and confidential information, including multimillion dollar sales proposals and detailed pricing and account information to use as an employee of the direct competitor, and to hide evidence of his breaches of the terms of his Employment Agreement, breaches of his duty of loyalty to Plaintiff and misappropriation of Plaintiff's trade secrets.

35.     Additionally, Villegas impermissibly deleted thousands of e-mails from his Imagine Communications e-mail account, some of which contained information that was

incredibly valuable to Plaintiff and others that evidenced his breaches of the terms of his Employment Agreement, breaches of his duty of loyalty to Plaintiff and his misappropriation of Plaintiff's trade secrets.

36.   Instead of looking out for the best interests of Plaintiff, during his employment Villegas also conspired with Manfrini, who reported directly to Villegas, to recruit members of Plaintiff's Caribbean and Latin American sales and services team to leave Plaintiff and work for a direct competitor.

37.   As part of their efforts, Villegas and Manfrini actively solicited approximately six of Plaintiff's employees to leave the company and to work for Plaintiff's direct competitor and directed them to fill out applications for employment.

38.   Villegas and Manfrini provided these employees guidance as to how to prevent Plaintiff from learning about their defection. Specifically, Villegas and Manfrini instructed these employees to use their personal e-mail accounts and messaging applications to communicate with each other and/or Plaintiff's competitor.

39.   Villegas further breached his duty of loyalty to Plaintiff by encouraging Plaintiff's employees, based out of Plaintiff's Argentina office, to attempt to extort a severance package, putatively under the theory that they were being constructively dismissed versus actively recruited by Villegas and Manfrini. Villegas suggested that his brother had success with the same tactic.  Villegas even went so far as referring those employees to an attorney to represent them.

40.   Moreover, Villegas provided Plaintiff's direct competitor and/or used on its behalf highly confidential information regarding Plaintiff's salary structures, quotas, compensation plans, employee benefits and other information to compete with Plaintiff and to facilitate the competitor's recruitment of Plaintiff's employees.

41.     Additionally, Villegas had detailed competitive proposals of Plaintiff printed on his behalf in order to take those with him to his new position with the direct competitor.

42.     Even before he tendered his resignation to Plaintiff, and in further violation of his obligations to Plaintiff, Villegas attended Plaintiff's direct competitor's (and now Villegas' current employer's) quarterly business review meeting in Portland, Oregon, on or about November 9, 2016.

43.     Additionally, before he tendered his resignation, Villegas suggested to channel partners that they stop doing work with Imagine and instead work with a competitor.

44.     Villegas is now employed by Plaintiff's direct competitor.

45.     Aware of the impropriety of his actions Villegas has worked to delete traces of his improper activity.

46.     Specifically, Villegas replaced the hard drive on his company laptop with a blank hard drive.

47.     Despite Plaintiff demanding that Villegas return all of its information, Villegas kept the original hard drive, along with Plaintiff's Confidential Information saved on it. Villegas's continued possession of the original hard drive provides him the ability to use the hard drive and/or the Confidential Information for his own use and for the use of his new employer in violation of his obligations.

**E.     Manfrini's Breaches of the Employment Agreement and His Duty of Loyalty**

48.     As a Senior Manager of Plaintiff, Manfrini was entrusted with Plaintiff's Confidential Information.

49.     At some point in 2016, Manfrini received a job offer from Plaintiff's direct competitor. Manfrini decided to accept the position before resigning from his position with

Plaintiff.

50.     Before Manfrini resigned, Manfrini and Villegas together devised a plan to steal Plaintiff's valuable Confidential Information so that their new employer could gain a competitive advantage over Plaintiff and/or to enrich themselves at Plaintiff's expense.

51.     In furtherance of the plan, and while still employed by Plaintiff, Manfrini impermissibly deleted thousands of e-mails from his Imagine Communications e-mail account, some of which contained information which was incredibly valuable to Plaintiff.

52.     Before he resigned, Manfrini also conspired with Villegas to recruit members of Plaintiff's sales and services team to leave Plaintiff and work for Plaintiff's direct competitor.

53.     Moreover, Manfrini provided Plaintiff's direct competitor and/or used on its behalf highly confidential information regarding Plaintiff's salary structures, quotas, compensation plans, employee benefits and other information to compete with Plaintiff and to facilitate Plaintiff's direct competitor's recruitment of Plaintiff's employees.

54.     Manfrini is now an employee of Plaintiff's direct competitor.

55.     Despite Plaintiff demanding that Manfrini return all of the files, Manfrini has retained copies of some or all of the files he misappropriated from Plaintiff.

56.     In order to prosecute this action, Plaintiff has retained the services of the undersigned counsel and is obligated to pay such counsel a reasonable fee.

57.     All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

### COUNT I – BREACH OF CONTRACT
**(Against Defendant Nahuel Villegas)**

58.     Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set forth herein.

59.     As discussed herein Villegas has breached the Villegas Employment Agreement with Plaintiff by failing to comply with the confidentiality provision and the provision requiring the return of Plaintiff's property upon the termination of Villegas's employment with Plaintiff.

60.     As a direct and proximate result of Villegas's breaches, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Imagine Communications Corp. respectfully requests that this Court enter judgment in its favor against Defendant Nahuel Villegas for damages, injunctive relief and such other relief as this Court deems appropriate.

## COUNT II – BREACH OF CONTRACT
### (Against Defendant Fernando Manfrini)

61.     Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set forth herein.

62.     As discussed herein Manfrini has breached the Manfrini Employment Agreement with Plaintiff by failing to comply with the confidentiality provision and the provision requiring the return of Plaintiff's property upon the termination of Manfrini's employment with Plaintiff.

63.     As a direct and proximate result of Manfrini's breaches, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Imagine Communications Corp. respectfully requests that this Court enter judgment in its favor against Defendant Fernando Manfrini for damages, injunctive relief and such other relief as this Court deems appropriate.

## COUNT III – BREACH OF DUTY OF LOYALTY
### (Against Defendant Nahuel Villegas)

64.     Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set forth herein.

65.     At all material times, Villegas, as Vice President of Plaintiff, and otherwise, owed a duty of loyalty to Plaintiff.

66.     At all material times, Plaintiff reposed trust and confidence in Villegas to act in its best interest and for its benefit.

67.     Villegas knew of and accepted the trust and confidence that Plaintiff reposed in him to act in its best interest and for its benefit.

68.     Villegas breached his duty to Plaintiff by stealing highly sensitive and confidential information from Plaintiff and using it for his own benefit and/or providing it to Plaintiff's direct competitor, deleting thousands of e-mails from his Imagine Communications e-mail account, conspiring with Manfrini to recruit other employees from Plaintiff to join Plaintiff's direct competitor and providing to Plaintiff's direct competitor and/or using on its behalf sensitive and highly confidential information regarding Plaintiff's salary structures, quotas, compensation plans, employee benefits, and other information to facilitate Plaintiff's direct competitor's recruitment of Plaintiff's employees.  Villegas also using for his own benefit and/or provided to Plaintiff's direct competitor Plaintiff's key development strategies, account strategies, customer lists, pricing models and other Confidential Information.

69.     As a direct and proximate result of Villegas's breaches of his duty to Plaintiff, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Imagine Communications Corp. respectfully requests that this Court enter judgment in its favor against Defendant Nahuel Villegas for damages, injunctive relief and such other relief as this Court deems appropriate.

## COUNT IV – BREACH OF DUTY OF LOYALTY
### (Against Defendant Fernando Manfrini)

70.     Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set

forth herein.

71.     At all material times, Manfrini, as Senior Manager of Plaintiff, and otherwise, owed a duty of loyalty to Plaintiff.

72.     At all material times, Plaintiff reposed trust and confidence in Manfrini to act in its best interest and for its benefit.

73.     Manfrini knew of and accepted the trust and confidence that Plaintiff reposed in him to act in its best interest and for its benefit.

74.     Manfrini breached his duty to Plaintiff by stealing highly sensitive and confidential information from Plaintiff and using it for his own benefit and/or providing it to Plaintiff's direct competitor, deleting thousands of e-mails from his Imagine Communications e-mail account, conspiring with Villegas to harm Plaintiff and recruit other employees from Plaintiff to join Plaintiff's direct competitor and providing to Plaintiff's direct competitor and/or using on its behalf sensitive and highly confidential information regarding Plaintiff's salary structures, quotas, compensation plans, employee benefits and other information to facilitate Plaintiff's competitor's recruitment of Plaintiff's employees.

75.     As a direct and proximate result of Manfrini's breaches of his duty of loyalty to Plaintiff, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Imagine Communications Corp. respectfully requests that this Court enter judgment in its favor against Defendant Fernando Manfrini for damages, injunctive relief and such other relief as this Court deems appropriate.

### COUNT V – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF FLORIDA STATUTE § 688.01 et seq.
### (Against Defendant Nahuel Villegas)

76.     Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set

forth herein.

77.     During his employment, Plaintiff entrusted Villegas with Plaintiff's confidential and proprietary trade secrets in the form of documents reflecting development strategies, account strategies, customer lists and pricing models.

78.     These documents and the information contained within constitute trade secrets protected by Florida's Uniform Trade Secrets Act.

79.     By virtue of his position with Plaintiff, Villegas had access to the trade secrets until the time his employment with Plaintiff ended.

80.     Before Villegas resigned, Villegas and Manfrini together devised a plan to steal Plaintiff's valuable Confidential Information so that their new employer could gain a competitive advantage over Plaintiff and/or to enrich themselves at Plaintiff's expense.

81.     After he tendered his resignation, Plaintiff specifically directed Villegas to return his laptop and other devices belonging to Plaintiff.

82.     Plaintiff also directed Villegas to refrain from turning on Plaintiff's laptop or other devices or otherwise accessing Plaintiff's proprietary information and trade secrets.

83.     Specifically, on November 21, 2016, Plaintiff sent Villegas a letter by both certified mail and electronic mail that unequivocally instructed him to return all of Plaintiff's written and electronic information to Plaintiff.

84.     Plaintiff also reminded Villegas that he was not permitted to retain any copies or backup versions of Plaintiff's information. Villegas was also reminded that he was not permitted to share any of Plaintiff's Confidential Information with his new employer, or anyone else. Plaintiff also advised Villegas that he was not to destroy Plaintiff's property.

85.     The November 21, 2016 letter also reminded Villegas of his obligation to return

all physical or tangible property belonging to Plaintiff, including, among other things, Plaintiff's laptops and computer files. In the letter, Plaintiff also requested that Villegas sign a document certifying, among other things, that he was maintaining in the strictest confidence Plaintiff's Confidential Information.

86.     Having not received any response to its November 21, 2016 letter, on November 28, 2016, Plaintiff sent Villegas an e-mail noting that Villegas had not returned Plaintiff's physical property, including its laptop, or its Confidential Information.  Plaintiff also again asked Villegas to certify that he was maintaining the confidentiality of Plaintiff's Confidential Information.

87.     As of December 1, 2016, Villegas had not returned any of Plaintiff's property and had not provided the requested certification.

88.     As a result, on December 1, 2016, Plaintiff sent Villegas another e-mail specifically demanding that he refrain from turning on Plaintiff's laptops, which Villegas still possessed.  Once again, Plaintiff demanded the return of its property.

89.     Glen Waldman ("Waldman"), Villegas's attorney, sent Plaintiff an e-mail acknowledging the receipt of Plaintiff's demands and, despite the urgency of the requests by Plaintiff to return its property, stating that he would not be responding until the next day and assuring Plaintiff that he would respond the next day, on December 2, 2016.

90.     In response to Waldman's e-mail, Plaintiff again instructed that Villegas return Plaintiff's property and refrain from turning on the laptop computers and again highlighted Plaintiff's concern about Villegas's spoliation.

91.     Plaintiff did not receive any correspondence from Waldman or Villegas on December 2, 2016.  Additionally, Villegas did not return any of Plaintiff's property by that date.

92.     On December 5, 2016, having still received no response from Waldman or Villegas, or even the return of Plaintiff's property, Plaintiff again contacted Villegas's attorney and reminded him of the previous demands.

93.     Instead of complying with Plaintiff's instructions, after Villegas's employment ended he, among other things: (1) improperly downloaded Plaintiff's confidential information and trade secrets from Plaintiff's laptop to various removable media drives; and (2) improperly replaced the hard drive (which stores Plaintiff's confidential information and trade secrets) on the laptop Plaintiff permitted Villegas to use for work purposes.

94.     Within the thousands of files misappropriated by Villegas were Plaintiff's trade secrets, including Plaintiff's: (1) Caribbean and Latin American ("CALA") Region Quarterly Business Reviews; (2) Europe, Middle East and Africa Region Quarterly Business Reviews; (3) 2016 CALA Customer Wins and Losses; (4) 2016 Global Sales Quotas and Achievements by Salesperson and Region; (5) CALA Order History; (6) 2016 CALA Customer Proposals; (7) 2016 Marketing Campaign and Take Share Strategies; (8) 2016 CALA Sales Pipeline; (9) 2016 Global Organizational Charts; and (10) 2016 Playout, Networking, Distribution and AMS Business and Product Competitive Reviews (collectively "Plaintiff's Trade Secrets"). The information contained in these documents constitute trade secrets.

95.     Also included within the documents stolen by Villegas and Manfrini were customer lists.

96.     Villegas's failure to return Plaintiff's property was confirmed by Waldman in a December 6, 2016 letter.

97.     Incredibly, being directed to refrain from turning on Plaintiff's laptop and reminded that he was obligated to return all copies of Plaintiff's Confidential Information,

Waldman's letter confirmed that Villegas himself actually copied the contents of his laptop onto a USB drive after Villegas received Plaintiff's demands. Villegas's actions are especially outrageous in that Waldman confesses in his December 6, 2016, letter that he specifically instructed Villegas to handle the laptops in a non-forensic manner despite Plaintiff's clear instructions to the contrary.

98.     There was no legitimate business purpose for Villegas to do any of these things.

99.     Making matters worse, due to Villegas's tampering with Plaintiff's laptop and replacing the hard drive before returning it to Plaintiff, Plaintiff may have lost valuable Confidential Information that was created by Villegas and stored locally on Plaintiff's laptop while in Villegas's possession.

100.     This information, which would have been created by Villegas while an employee of Plaintiff, could be extremely valuable to Plaintiff and would not have been available to Plaintiff through its intranet.

101.     By unlawfully taking, accessing, downloading and/or destroying Plaintiff's confidential and propriety information, Villegas improperly obtained Plaintiff's trade secrets, thus misappropriating such information in violation of Florida's Uniform Trade Secrets Act.

102.     Plaintiff will suffer irreparable injury if injunctive relief does not issue precluding Villegas for using or disclosing Plaintiff's trade secrets and confidential and proprietary information.

103.     As a direct and proximate result of Villegas's misappropriation of Plaintiff's trade secrets and confidential and proprietary information, Plaintiff has suffered and continues to suffer damages.

104.     Villegas's conduct was wanton, willful and malicious, so as to justify the

imposition of exemplary damages.

WHEREFORE, Plaintiff Imagine Communications Corporation respectfully requests that this Court enter judgment in its favor against Defendant Nahuel Villegas for damages, as provided under Florida Statute § 688.04, attorneys' fees and costs pursuant to Florida Statute § 688.05 injunctive relief and such other relief as this Court deems appropriate.

### COUNT VI – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF FLORIDA STATUTE § 688.01 et seq.
#### (Against Defendant Fernando Manfrini)

105.    Plaintiff incorporates the allegations contained in Paragraphs 1-57 as if fully set forth herein.

106.    During his employment, Plaintiff entrusted Manfrini with Plaintiff's confidential and proprietary trade secrets in the form of documents reflecting development strategies, account strategies, customer lists and pricing models. These documents and the information contained within constitute trade secrets protected by Florida's Uniform Trade Secrets Act.

107.    By virtue of his position with Plaintiff, Manfrini had access to the trade secrets until the time his employment with Plaintiff ended.

108.    Before Manfrini resigned, Manfrini and Villegas together devised a plan to steal Plaintiff's valuable Confidential Information so that their new employer could gain a competitive advantage over Plaintiff and/or to enrich themselves at Plaintiff's expense.

109.    After he tendered his resignation, Plaintiff specifically directed Manfrini to return his laptops and other devices belonging to Plaintiff.  Plaintiff also directed Manfrini to refrain from turning on Plaintiff's laptop or other devices or otherwise accessing Plaintiff's proprietary information and trade secrets.

110.    Specifically, on November 22, 2016, Plaintiff sent Manfrini a letter by both

certified mail and electronic mail which unequivocally instructed him to return all of Plaintiff's written and electronic information to Plaintiff.

111.    Plaintiff also reminded Manfrini that he was not permitted to retain any copies or backup versions of Plaintiff's information. Manfrini was also reminded that he was not permitted to share any of Plaintiff's Confidential Information with his new employer, or anyone else.

112.    The November 22, 2016 letter also reminded Manfrini of his obligation to return all physical or tangible property belonging to Plaintiff, including, among other things, Plaintiff's laptops and computer files.  In the letter, Plaintiff also requested that Manfrini sign a document certifying, among other things, that he was maintaining in the strictest confidence Plaintiff's Confidential Information.

113.    Having not received any response to its November 22, 2016 letter, on November 28, 2016, Plaintiff sent Manfrini an e-mail noting that Manfrini had not returned Plaintiff's physical property, including its laptop, or its Confidential Information.  Plaintiff also again asked Manfrini to certify that he was maintaining the confidentiality of Plaintiff's Confidential Information.

114.    Instead of complying with Plaintiff's instructions, after Manfrini's employment ended he, among other things, improperly downloaded Plaintiff's Confidential Information and Trade Secrets, including customer lists, from Plaintiff's laptop to various removable media drives.

115.    Manfrini's failure to return Plaintiff's property was confirmed by Waldman in a December 6, 2016 letter.

116.    Incredibly, despite being directed to refrain from turning on Plaintiff's laptop and reminded that he was obligated to return all copies of Plaintiff's Confidential Information,

Waldman's letter confirmed that Manfrini himself actually copied the contents of his laptop onto a USB drive after Manfrini received Plaintiff's demands.

117.    There was no legitimate business purpose for Manfrini to do any of these things.

118.    By unlawfully taking, accessing, downloading and/or destroying Plaintiff's confidential and propriety information, Manfrini improperly obtained Plaintiff's trade secrets, thus misappropriating such information in violation of Florida's Uniform Trade Secrets Act.

119.    Plaintiff will suffer irreparable injury if injunctive relief does not issue precluding Manfrini for using or disclosing Plaintiff's trade secrets and confidential and proprietary information.

120.    As a direct and proximate result of Manfrini's misappropriation of Plaintiff's trade secrets and confidential and proprietary information, Plaintiff has suffered and continues to suffer damages.

121.    Manfrini's conduct was wanton, willful and malicious, so as to justify the imposition of exemplary damages.

WHEREFORE, Plaintiff Imagine Communications Corporation respectfully requests that this Court enter judgment in its favor against Defendant Fernando Manfrini for damages, as provided under Florida Statute § 688.04, attorneys' fees and costs pursuant to Florida Statute § 688.05 injunctive relief and such other relief as this Court deems appropriate.

## COUNT VII – CONVERSION
### (Against Defendant Nahuel Villegas)

122.    Plaintiff incorporates the allegations contained in Paragraphs 1-57 and 77-100 as if fully set forth herein.

123.    Villegas has wrongfully and unlawfully converted Plaintiff's files and data, including files and data containing Plaintiff's confidential and proprietary information for his

own use and for the use of Plaintiff's competitor.

124. Villegas has specific and identifiable files and data that he has taken from Plaintiff.

125. Plaintiff has an immediate right to possess those files and data.

126. Villegas has obtained those files and data by unauthorized acts of taking, downloading and copying those materials.

127. Plaintiff has demanded the return of its property. Instead of returning the property, Villegas has retained it or given some or all of it to a third party.

128. As a result of Villegas's wrongful conversion of Plaintiff's confidential and proprietary information, Plaintiff has been damaged and is entitled to damages.

129. Villegas's conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages.

WHEREFORE, Plaintiff Imagine Communications Corporation respectfully requests that this Court enter judgment in its favor against Defendant Nahuel Villegas for damages, injunctive relief and such other relief as this Court deems appropriate.

## COUNT VIII – CONVERSION
### (Against Defendant Fernando Manfrini)

130. Plaintiff incorporates the allegations contained in Paragraphs 1-57 and 106-117 as if fully set forth herein.

131. Manfrini has wrongfully and unlawfully converted Plaintiff's files and data, including files and data containing Plaintiff's confidential and proprietary information for his own use and for the use of Plaintiff's competitor.

132. Manfrini has specific and identifiable files and data that he has taken from Plaintiff.

133.    Plaintiff has an immediate right to possess those files and data.

134.    Manfrini has obtained those files and data by unauthorized acts of taking, downloading and copying those materials.

135.    Plaintiff has demanded the return of its property. Instead of returning the property, Manfrini has retained it or given some or all of it to a third party.

136.    As a result of Manfrini's wrongful conversion of Plaintiff's confidential and proprietary information, Plaintiff has been damaged and is entitled to damages.

137.    Manfrini's conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages.

WHEREFORE, Plaintiff Imagine Communications Corporation respectfully requests that this Court enter judgment in its favor against Defendant Fernando Manfrini for damages, injunctive relief and such other relief as this Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated:  January 30, 2017

> **GENOVESE JOBLOVE & BATTISTA, P.A.**
> *Attorneys for Plaintiff*
> 100 Southeast Second Street
> TotalBank Tower, Suite 4400
> Miami, Florida  33131
> Telephone:  (305) 349-2300
> Facsimile:  (305) 349-2310
>
> By:  /s/Aaron S. Blynn
> _____
>      Michael D. Joblove
>      Florida Bar No.: 354147
>      mjoblove@gjb-law.com
>      Aaron S. Blynn
>      Florida Bar No. 0073464
>      ablynn@gjb-law.com

(11827-001 / 2672812 / #130)

# Exhibit "A"



## EMPLOYEE AGREEMENT

As a condition of, and in consideration of my employment and the compensation and benefits provided to me by Harris Corporation, its subsidiaries or affiliated companies controlled by Harris Corporation (collectively referred to herein as "Harris"), Harris and I agree as follows:

1.   **Definitions.**

(A)   "Confidential Information" means any confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or some other form, and includes, without limitation, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities, employees and compensation, drawings, manuals, inventions, patent applications, process and fabrication information, research plans and results, computer programs, data bases, software flow charts, specifications, technical data, scientific and technical information, test results, market studies, and know-how related to any of the above.

(B)   "Harris Confidential Information" means Confidential Information relating to Harris and including Confidential Information received by Harris from third parties which Harris is obligated to keep confidential.

2.   **Confidential Information Acquired Outside My Employment With Harris.**   During my employment with Harris, I will hold in strictest confidence and not use or disclose for the benefit of Harris any Confidential Information of any prior employer or any other employer, person or entity without the express written consent of such employer, person or entity.

3.   **Employee Representations To Harris.**   By signing this Agreement, I also certify that my employment with Harris does not and will not violate the provisions of any agreements or understandings, written or oral, to which I am a party, including any agreements or understandings relating to the protection of Confidential Information and any covenants not to compete.   I agree to specifically identify in an attachment to this Agreement any and all agreements or understandings, written or oral, with any prior employer or any other employer, person or entity that may affect or restrict me in my employment with Harris and to attach hereto copies of any such written agreements or understandings.

4.   **Confidential Information Acquired During My Employment With Harris.**   During and after my employment with Harris, I will maintain in strict confidence and not disclose to any person or entity any Harris Confidential Information except with the prior permission of Harris. Also, I will not use any Harris Confidential Information for the benefit of anyone other than Harris. Further, I represent that I will not, during my employment with Harris, enter into any agreement requiring the protection of Confidential Information of another person or entity relating to any business or technology of Harris without the prior written consent of Harris.

5.   **Disclosure Of Inventions And Assignment To Harris.**

(A)   All inventions (whether patentable or unpatentable), improvements, discoveries and creations (including computer programs) and all copyrights therein, which during the period of my employment by Harris I shall conceive or first reduce to practice alone or in conjunction with others (a) while engaged in any work for Harris or with the use of facilities or materials of Harris, or (b) which relate to any product, process, development or research work, or any other business of Harris, and all records relating thereto (in written, or machine readable, or other form), shall be the property of Harris. I agree to promptly make full written disclosure of all inventions I may conceive or first reduce to practice during the period of my employment by Harris, and to submit such disclosures and related records to the proper designated representative of Harris.

(B)   Further, on request of Harris at any time, I will, without charge but at Harris' expense, execute and deliver applications for patents and copyright registrations in the United States or any foreign countries on such inventions, improvements, discoveries and creations, together with assignment to Harris of my entire interest therein, and I will give to Harris such reasonable assistance as may be requested of me in securing, enforcing and protecting such applications, patents, unpublished copyrights and copyright registrations.

(C)   I agree to identify on a non-confidential basis in a separate attachment my prior inventive activities which I own or control in whole or in part.

### IMPORTANT NOTICE

**This Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of Harris was used and which was developed entirely on your own time, unless (a) the invention relates (i) directly to the business of Harris or (ii) to Harris' actual or demonstrably anticipated research or development or (b) the invention results from any**

work performed by you for Harris.

      6.     **Physical Property Acquired During My Employment.** Upon termination of my employment for any reason, I agree to immediately return all physical or tangible property of Harris including but not limited to credit cards, keys, computers, equipment, supplies, and the originals and copies of any and all records, notebooks, drawings, technical data, photographs, recordings and computer files.

      7.     **Termination.** I understand that my obligations under this Agreement shall survive termination of my employment with Harris, whether such termination is with or without cause. In the event that my employment with Harris is terminated for any reason, I agree to provide, and consent to Harris to provide, a copy of this Agreement to any recruiter or prospective or subsequent employer.

      8.     **Assignment.** This Agreement may be enforced by Harris' assignees and successors.

      9.     **Non-Waiver.** I understand and agree that the failure of Harris to insist in any one or more instances upon performance of any of the terms, covenants or conditions of this Agreement shall not be construed as a waiver or a relinquishment of any right or claim granted or arising hereunder or of the future performance of any such term, covenant or condition, and such failure shall in no way affect the validity of this Agreement or the rights and obligations hereunder. Further, I understand and agree that, in addition to my obligations under this Agreement, I may have additional obligations to Harris that arise under statutory and/or common law, and that nothing in this Agreement is intended to or is to be construed as a waiver or relinquishment by Harris of any of its statutory and/or common law rights or claims.

      10.    **Employee-At-Will.** This Agreement shall not be construed to constitute an employment agreement for a term certain. I understand that my relationship with Harris is an "at-will" relationship, which means that either Harris or I can terminate my employment at any time with or without cause or notice.

      11.    **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement, Harris may suffer irreparable harm and shall be entitled to injunctive relief to enforce this Agreement without the necessity of posting a bond or other security and without prejudice to any other rights and remedies that Harris may have for a breach of this Agreement.

      12.    **Governing Law And Venue.** This Agreement will be governed by and interpreted in accordance with the laws of the State of Florida without regard to or application of choice of law rules or principles. I hereby expressly consent to the jurisdiction and venue of the state and federal courts in and for Brevard County, Florida in any lawsuit filed by Harris or me relating to this Agreement.

      13.    **Severability.** In the event that any provision of this Agreement is found by a court to be illegal, invalid or unenforceable, then such provision shall not be voided but shall be enforced to the maximum extent permissible under applicable law, and the remainder of this Agreement shall remain in full force and effect.

      14.    **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between Harris and me relating to the subject matters herein and supercedes all other agreements and discussions between us; except this Agreement shall not void my obligations to protect all Confidential Information and assign inventions in accordance with any prior employee agreement between me and Harris. No changes to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by an authorized representative of Harris. Any change or changes in my duties, assignments, salary or compensation will not affect my responsibilities and obligations under this Agreement.

      15.    **Voluntary Nature Of Agreement.** My signature below certifies that I have read, understand and agree with the terms and conditions of this Agreement, and that I am voluntarily signing this Agreement.

HARRIS CORPORATION

By: _Patti Kublin_

Print Name: _Patti Kublin_

Title: _HR Asst_

Date: _6-20-02_

EMPLOYEE

Signature: _Nahuel Villegas_

Print Name: _NAHUEL D. VILLEGAS_

Date: _JUN. 20. 2002_

*Instructions: After reading this Employee Agreement, the employee should sign two (2) copies in the presence of a Human Resources or other company representative, who will also sign the Agreement as a witness. One signed original will be retained by the employee and one signed original will be maintained in the employee's personnel file.*

Rev. 1/1/02

# Exhibit "B"



# EMPLOYEE AGREEMENT

As a condition of, and in consideration of my employment and the compensation and benefits provided to me by Harris Corporation, its subsidiaries or affiliated companies controlled by Harris Corporation (collectively referred to herein as "Harris"), Harris and I agree as follows:

1. **Definitions.**

   (A)   "Confidential Information" means any confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or some other form, and includes, without limitation, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities, employees and compensation, drawings, manuals, inventions, patent applications, process and fabrication information, research plans and results, computer programs, data bases, software flow charts, specifications, technical data, scientific and technical information, test results, market studies, and know-how related to any of the above.

   (B)   "Harris Confidential Information" means Confidential Information relating to Harris and including Confidential Information received by Harris from third parties which Harris is obligated to keep confidential.

2. **Confidential Information Acquired Outside My Employment With Harris.**

   During my employment with Harris, I will hold in strictest confidence and not use or disclose for the benefit of Harris any Confidential Information of any prior employer or any other employer, person or entity without the express written consent of such employer, person or entity.

3. **Employee Representations To Harris.**

   By signing this Agreement, I also certify that my employment with Harris does not and will not violate the provisions of any agreements or understandings, written or oral, to which I am a party, including any agreements or understandings relating to the protection of Confidential Information and any covenants not to compete. I agree to specifically identify in an attachment to this Agreement any and all agreements or understandings, written or oral, with any prior employer or any other employer, person or entity that may affect or restrict me in my employment with Harris and to attach hereto copies of any such written agreements or understandings.

4. **Confidential Information Acquired During My Employment With Harris.**

   During and after my employment with Harris, I will maintain in strict confidence and not disclose to any person or entity any Harris Confidential Information except with the prior permission of Harris. Also, I will not use any Harris Confidential Information for the benefit of anyone other than Harris. Further, I represent that I will not, during my employment with Harris, enter into any agreement requiring the protection of Confidential Information of another person or entity relating to any business or technology of Harris without the prior written consent of Harris.

5. **Disclosure Of Inventions and Assignment To Harris.**

   (A)   All inventions (whether patentable or unpatentable), improvements, discoveries and creations (including computer programs) and all copyrights therein, which during the period of my employment by Harris I shall conceive or first reduce to practice alone or in conjunction with others (a) while engaged in any work for Harris or with the use of facilities or materials of Harris, or (b) which relate to any product, process, development or research work, or any other business of Harris, and all records relating thereto (in written, or machine readable, or other form), shall be the property of Harris. I agree to promptly make full written disclosure of all inventions I may conceive or first reduce to practice during the period of my employment by Harris, and to submit such disclosures and related records to the proper designated representative of Harris.

   (B)   Further, on request of Harris at any time, I will, without charge but at Harris' expense, execute and deliver applications for patents and copyright registrations in the United States or any foreign countries on such inventions, improvements, discoveries and creations, together with assignment to Harris of my entire interest therein, and I will give to Harris such reasonable assistance as may be requested of me in securing, enforcing and protecting such applications, patents, unpublished copyrights and copyright registrations.

   (C)   I agree to identify on a non-confidential basis in a separate attachment my prior inventive activities which I own or control in whole or in part.

### IMPORTANT NOTICE

**This Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of Harris was used and which was developed entirely on your own time, unless (a) the invention relates (i) directly to the business of Harris or (ii) to Harris' actual or demonstrably anticipated research or development or (b) the invention results from any work performed by you for Harris.**

6. **Physical Property Acquired During My Employment.**

   Upon termination of my employment for any reason, I agree to immediately return all physical or tangible property of Harris including but not limited to credit cards, keys, computers, equipment, supplies, and the originals and copies of any and all records, notebooks, drawings, technical data, photographs, recordings and computer files.

7. **Termination.**

   I understand that my obligations under this Agreement shall survive termination of my employment with Harris, whether such termination is with or without cause. In the event that my employment with Harris is terminated for any reason, I agree to provide, and consent to Harris to provide, a copy of this Agreement to any recruiter or prospective or subsequent employer.

H-2612 (Rev. 02/04)



# EMPLOYEE AGREEMENT

**8. Assignment.**

This Agreement may be enforced by Harris' assignees and successors.

**9. Non-Waiver.**

I understand and agree that the failure of Harris to insist in any one or more instances upon performance of any of the terms, covenants or conditions of this Agreement shall not be construed as a waiver or a relinquishment of any right or claim granted or arising hereunder or of the future performance of any such term, covenant or condition, and such failure shall in no way affect the validity of this Agreement or the rights and obligations hereunder. Further, I understand and agree that, in addition to my obligations under this Agreement, I may have additional obligations to Harris that arise under statutory and/or common law, and that nothing in this Agreement is intended to or is to be construed as a waiver or relinquishment by Harris of any of its statutory and/or common law rights or claims.

**10. Employee-At-Will.**

This Agreement shall not be construed to constitute an employment agreement for a term certain. I understand that my relationship with Harris is an "at-will" relationship, which means that either Harris or I can terminate my employment at any time with or without cause or notice.

**11. Injunctive Relief.**

I understand that in the event of a breach or threatened breach of this Agreement, Harris may suffer irreparable harm and shall be entitled to injunctive relief to enforce this Agreement without the necessity of posting a bond or other security and without prejudice to any other rights and remedies that Harris may have for a breach of this Agreement.

**12. Governing Law and Venue.**

This Agreement will be governed by and interpreted in accordance with the laws of the State of Florida without regard to or application of choice of law rules or principles. I hereby expressly consent to the jurisdiction and venue of the state and federal courts in and for Brevard County, Florida  in any lawsuit filed by Harris or me relating to this Agreement.

**13. Severability.**

In the event that any provision of this Agreement is found by a court to be illegal, invalid or unenforceable, then such provision shall not be voided but shall be enforced to the maximum extent permissible under applicable law, and the remainder of this Agreement shall remain in full force and effect.

**14. Entire Agreement.**

This Agreement sets forth the entire agreement and understanding between Harris and me relating to the subject matters herein and supercedes all other agreements and discussions between us; except this Agreement shall not void my obligations to protect all Confidential Information and assign inventions in accordance with any prior employee agreement between me and Harris. No changes to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by an authorized representative of Harris. Any change or changes in my duties, assignments, salary or compensation will not affect my responsibilities and obligations under this Agreement.

**15. Voluntary Nature Of Agreement.**

My signature below certifies that I have read, understand and agree with the terms and conditions of this Agreement, and that I am voluntarily signing this Agreement.

HARRIS CORPORATION

By: *Patti Kublin*

Print Name: *Patti Kublin*

Title: *HR Asst*

Date: *11-15-04*

EMPLOYEE

Signature: *[signature]*

Print Name: *Fernando Menfrini*

Date: *11/15/04*

*Instructions:*

*After reading this Employee Agreement, the employee should sign two (2) copies in the presence of a Human Resources or other company representative, who will also sign the Agreement as a witness. One signed original will be retained by the employee and one signed original will be maintained in the employee's personnel file.*

H-2612 (Rev. 02/04)